(June 24, 1905.)

STATE v. COOPER.

[81 Pac. 374.]

POWER OF STATE BOARD OF MEDICAL EXAMINERS—PRACTITIONERS NOT
GUILTY OF MISDEMEANOR WHEN.

1. Under the provisions of section 5 of what is known as the
medical law of 1899 (Sess. Laws 1899, p. 346) the board of medi-
cal examiners are not empowered to call upon applicants for a
license for their diplomas who were engaged in the practice of
their profession under the law of 1887.

2. Where t is shown that an applicant for a license to practice medicine and surgery was a resident of the state engaged in the practice of his profession under the provisions o ' the law of 1887, and had complied with all the provisions of the law of 1899; *held,* that in case the board of medical examiners refused to issue his license it was not criminal in him to pursue his profession.

(Syllabus by the court.)

APPEAL from the District Court of Bingham County. Honorable James M. Stevens, Judge.

Defendant was found guilty of practicing medicine and surgery without having a license under the provisions of the law of 1899. Judgment reversed.

Milton A. Brown and W. W. Adamson, for Appellant.

State medical boards are not courts, and have not judicial powers (*Wilkins v. State,* 113 Ind. 514, 16 N. E. 192; *Kuntz v. Sumpton,* 117 Ind. 1, 19 N. E. 474; *State v. Hathaway,* 115 Mo. 36, 21 S. W. 1081); but may be termed courts of *quasi* jurisdiction for certain purposes specially conferred by statute, and they are not permitted to act outside of the scope of such statutory provisions which are mandatory, and the statutory provisions under which a case comes must be followed. . (*State v. Pendergrast,* 6 Ohio Cir. Dec. 807.)

J. J. Guheen, Attorney General, and R. M. McCracken, for the State.

Power of medical board: In *Barmore v. State Board of Examiners,* 21 Or. 301, 28 Pac. 8, the court held that the board had a right to define the words "medical institutions in good standing" so as to include only those schools that require for graduation at least three regular sessions of six months each, extending over a period of three years, and to make a further rule that those examined must attain seventy-five per cent. In *Re Inman,* 8 Idaho, 398, 69 Pac. 120, your honors have disposed of nearly every point raised by this appeal. The case is on all-fours with the case at bar, differing in no material particular, as we see it. Appellant contends that

he ought to have been licensed by the state medical board at once on application, and points to section 5 of the medical act of 1899 (Sess. Laws 1899, p. 349). He is wrong. That section applies to "all persons who were legally engaged in the practice of medicine or surgery," not to those who were practicing under cover of a diploma granted by an institution found guilty of selling diplomas for $25 each, with no requirements as to study. (*Independent M. College v. People,* 182 Ill. 275, 55 N. E. 345.) The rule is well settled that where a license is required, the absence thereof renders the person amenable to the penalty prescribed, and it is immaterial whether such person was under the law entitled to a license and could have compelled its issuance in an appropriate proceeding. (*State v. Rumberg,* 86 Minn. 399, 99 N. W. 1055, 58 L. R. A. 925; *Harding v. People,* 10 Colo. 387, 15 Pac. 727; *Deitz v. Central City,* 1 Colo. 323; *State v. Jamison,* 23 Mo. 330; *State v. Myers,* 63 Mo. 324.)

STOCKSLAGER, C. J.—Appellant was prosecuted in the probate court of Bingham county on a complaint sworn to by one E. E. Kelley, charging that "J. B. Cooper, of Blackfoot, county of Bingham, state of Idaho, on or about the twenty-sixth day of March, 1904, in said county of Bingham and state of Idaho, did willfully and unlawfully practice medicine without obtaining a license so to do, by then and there doctoring and prescribing medicine in and for the family of Adam Yancy, members of said family then and there being sick, which sickness the said J. B. Cooper did then and there profess to cure by prescribing medicine and drugs for said bodily ailment, then and there with intent to receive compensation therefor. All of which is contrary to the form of the statute." Defendant—appellant—was tried in the probate court without a jury, convicted, and a fine of fifty dollars was imposed. An appeal was taken to the district court from the judgment on both law and fact. The case was tried in the district court on an agreed statement of facts, a trial by jury having been waived by the defendant. The agreed statement of facts follows:

"1. That defendant was and is a duly licensed graduate of the Western University of Chicago, and the Independent Medical College of Chicago.

"2. That on or about the thirtieth day of July, 1897, defendant, J. B. Cooper, established an office and residence at Blackfoot, Bingham county, Idaho, and has ever since continued to reside and practice medicine and surgery in said town, county and state.

"3. That before said defendant commenced the practice of medicine and surgery as aforesaid he duly filed his affidavit of identity, and filed and recorded his medical diploma with the county recorder of Bingham county, state of Idaho, said diploma being the diploma aforesaid from the Independent Medical College of Chicago, which had a *bona fide* existence and was duly chartered under the laws of the state of Illinois at the time said diploma was granted to the defendant.

"4. That said J. B. Cooper was and is the rightful possessor of said diploma and is the identical person named therein.

"5. That at the time of the passage of the act commonly known as the 'medical act' of 1899, the defendant was legally engaged in the actual practice of medicine and surgery within the state of Idaho, under the provisions of the medical act of 1887.

"6. That on or about the fifteenth day of May, 1899, and within six months after the medical act of 1899 went into effect, said J. B. Cooper made application for a license to practice medicine and surgery, to the state board of medical examiners upon suitably prepared blanks furnished by said board, and transmitted with said application a certificate from the county recorder of Bingham county; that said applicant, J. B. Cooper, is a *bona fide* resident of Bingham county, state of Idaho, and had recorded his diploma under the provisions of the medical act of 1887, giving the date of such record, and defendant transmitted with said application the fee of five dollars, and all the proof of defendant's good moral character requested by said board.

"7. That thereafter, and on or about the twenty-fifth day of May, 1889, said J. B. Cooper received from the secretary of said board notice that his application properly executed and the fee of five dollars had been received by said board, and that said board wished to inspect his, the said J. B. Cooper's, medical diploma.

"8. That thereafter and on or about the fifth day of June, 1899, said J. B. Cooper sent his said medical diploma to the said medical board, and was thereafter informed by said board that they did not, and would not, recognize the Independent Medical College of Chicago as one having authority to issue a diploma to a doctor of medicine.

"9. That said state board of medical examiners thereafter, and ever since have, refused to issue this defendant a license to practice medicine and surgery, although requested so to do.

"10. That on or about the seventh day of June, 1901, this defendant requested said board to send him the necessary blanks and he would make another application to said board of medical examiners for a license to practice medicine and surgery, and thereupon he received the reply from the secretary of said board that said board considered it quite useless for him, the said J. B. Cooper, to apply again, in view of the recent decision of the supreme court of Illinois in revoking the charter of the Independent Medical College of Chicago, and that said board was perfecting plans for the rigorous prosecution of every person practicing without a license.

"11. That the said defendant, J. B. Cooper, is, and was at all times hereinafter mentioned, a citizen of the United States.

"12. That the said defendant, J. B. Cooper, was at the time of his arrest, practicing medicine and surgery without a license, and did on the twenty-sixth day of March, 1904, in said county of Bingham and state of Idaho, prescribe medicine in and for the family of Adam Yancy with intent to receive compensation therefor."

Following this agreed statement of the facts, we find the trial court made the following record: "The foregoing agreed statement of facts is hereby adopted by the court as the findings of fact in this cause, and the court finds as a conclu-

sion of law that said J. B. Cooper was not authorized to
practice as a physician and surgeon in the state of Idaho at
the time alleged in the complaint; and having been fully
advised in the premises, it is ordered and adjudged that the
defendant be and is hereby adjudged guilty and fined in the
sum of fifty dollars.''

The appeal to this court is from the judgment only.

Counsel for appellant insist that being a legal practitioner
under the provisions of the statute of 1887, at the time of the
passage of the act of 1899, he has complied with all the re-
quirements of the law of 1899. It will be observed that the
agreed statement of facts (the fifth paragraph) settles this
question, that is, that appellant was ''legally engaged in the
actual practice of medicine and surgery within the state of
Idaho, under the provisions of the medical act of 1887.'' This
fact being conceded, it becomes necessary to examine the law
known as the ''Medical Act of 1899,'' and ascertain the
powers and duties of the state board of medical examiners
as well as the duties and privileges of appellant under the
last-named act. Under the agreed facts in this case it only
becomes necessary to examine and construe section 5 of the
1899 law, page 346. It follows: ''All persons, except as
hereinafter provided, who were legally engaged in the actual
practice of medicine and surgery, or either of them, within
the state, at the time of the passage of this act, under the
provisions of the medical act of 1887, shall be licensed with-
out examination to continue such practice under this act,
by making application to the state medical examining board
upon suitably prepared blanks to be furnished by said board,
within six months from the taking effect of this act. The
applicant shall be required to transmit with said applica-
tion a certificate from the county recorder from the county
in which he or she may reside, and that said applicant is a
*bona fide* resident of the state and has recorded his or her
diploma under the provisions of the medical act of 1887,
giving the date of such record. Persons who received a li-
cense under the now defunct medical law of 1897 will simply
be required to transmit such license. The fee for license

under this section shall be five dollars ($5), and shall in each case accompany the application. Upon fulfillment of the requirements herein stated, the board shall issue to said applicant a license to practice medicine and surgery within this state. Persons for whom the provisions of this section are intended, failing or refusing to avail themselves of the same, shall be and are hereby subject to the requirements of section 6 of this act.''

Section 6 provides: ''After the passage of this act, every person, except as hereinbefore provided, desiring to commence the practice of medicine and surgery, or either of them, within the state shall, immediately and prior to commencing the same, make a written application to the state medical examining board, upon suitably prepared blanks, to be furnished by the board, for a license so to do. The applicant shall transmit with said application his or her diploma, together with an affidavit setting forth that said diploma is genuine and that the applicant is the rightful possessor thereof, and the identical person named therein, and that same was obtained by pursuing the regular course of study or examination in said institution, and setting forth that he or she is a citizen of the United States, or has declared their intention of becoming such. If the said diploma has been issued by a reputable college of medicine in good standing, said applicant shall be eligible to examination.''

By construing these two sections together in connection with the agreed statement of facts, it would seem that the board of medical examiners were endeavoring to require appellant to comply with the provisions of section 6 instead of section 5. As we construe section 5, the board was powerless to call upon appellant to furnish it with the original or a copy of his diploma. It was immaterial under his application whether he had a diploma or not, as it is agreed that he was ''legally engaged in the actual practice of medicine and surgery within the state of Idaho, under the provisions of the medical act of 1887,'' at the time of the passage of the act of 1899. It is argued by counsel for respond-

ent that the words "legally engaged in the actual practice of medicine and surgery," as used in the agreed facts were mere conclusions, and cannot in any way affect the respondent. If we should adopt this theory of counsel for the state, what is the situation? It is shown by the agreed facts which are adopted by the court as its findings that appellant had sufficiently complied with the provisions of the law of 1887 to entitle him to practice his profession, and that at the time of the passage of the act of 1899 he was a *bona fide* resident of the state residing at Blackfoot, in Bingham county, and engaged in the practice of medicine and surgery. That within the time prescribed by the provisions of the act of 1899, appellant furnished the state board of medical examiners with all the requirements of the medical act of 1899, together with the fee prescribed by said act.

Under the facts disclosed by this record, we do not think it material whether we accept the words "legally engaged in the actual practice of medicine and surgery" as used in the agreed facts and adopted by the court as one of its findings, as a conclusion of law or otherwise, as there is sufficient in the record to show that appellant had complied with the statute of 1887, and had made every effort possible on his part to comply with the law of 1899.

It is urged by counsel for respondent that appellant should have resorted to his civil remedy by an appeal from the action of the board of medical examiners to the district court of Bingham county, and there had the action of the said board reviewed. On the other hand, it is urged by counsel for appellant that appellant was never notified of the action of said board rejecting his application. It is true that the seventh clause of the agreed statement of facts shows that the board of medical examiners called upon the appellant for his medical diploma. The eighth clause shows that his diploma was sent to the board of medical examiners and he was thereafter informed by said board that they did not and would not recognize the Independent Medical College of Chicago as one having authority to issue a diploma to a doctor of medicine. When appellant received this notice he had the right

to appeal from the action of the board, or he could treat their action as an infringement upon his rights under the laws of 1887 and 1899. The statute of 1899 did not authorize the board to demand of appellant his diploma. He had furnished it all that it was entitled to under the law. It could not ignore the plain provisions of the 1899 law and thereby make a criminal of a citizen of the state engaged in a legal and lawful business. If the board of medical examiners could withhold a license from an applicant in this manner until he could appeal to the courts for redress, making a criminal of him every time he prescribed for or visited a patient, they could not only deprive him of valuable property rights, but ruin him in his profession and brand him as a criminal. This is neither the spirit nor intent of the law.

Judgment reversed and cause remanded for further proceedings in harmony with this opinion.

Ailshie, J., and Sullivan, J., concur.